# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| v. | ) ) | **Docket No.: 3:05-CR-013** **Judge Thomas Varlan** |
| SAMUEL R. FRANKLIN, | ) ) | |
| Defendant. | ) ) | |

## SENTENCING MEMORANDUM

The Defendant, Samuel R. Franklin, by and through counsel, pursuant to Federal Rules of Criminal Procedure 32, respectfully submits this Sentencing Memorandum to the Court. Defendant requests this Honorable Court to impose supervised probation or a term of imprisonment at least lower than that of his co-defendants pursuant to the Government's motion based on substantial assistance under U.S.S.G. §5K1.1 and upon consideration of those factors listed under 18 U.S.C. § 3553 (2005), and other applicable sentencing statutes and in support thereof says as follows:

## I.     CASE HISTORY

On February 3, 2005, the United States Attorney's Office for the Eastern District of Tennessee filed an Information charging Mr. Franklin with conspiracy to injure, oppress, threaten and intimidate Lester Eugene Siler in violation of 18 U.S.C. § 241 (2005). Mr. Franklin was charged along with the following co-defendants: David Weber, Joshua Monday, Shayne Green and William Carroll.

On February 23, 2005, after review of the plea agreement and negotiations with the United States Attorney's Office, Mr. Franklin pled guilty to the Information. Since that time, Mr. Franklin has been cooperating with federal authorities while awaiting sentencing. Mr. Franklin has been in custody since the date of his plea and is currently scheduled for sentencing on July 13, 2005.

## II.     GUIDELINE ANALYSIS

After substantial review by all parties, Mr. Franklin received a revised Presentence Report ("PSR") on June 6, 2005. The report indicates an adjusted guideline level of 27, Criminal History Category I, calling for a sentence of 70-87 months. Also, Mr. Franklin filed a Notice of Objection regarding the Obstruction of Justice calculation contained in the most recent PSR. Should Mr. Franklin prevail in this argument his guidelines range would be reduced to 25. Further, through the course of this Sentencing Memorandum, Mr. Franklin relies on the various statutes, case law, and facts in requesting a sentence below that indicated in the PSR.

## III.    PERSONAL HISTORY

Information with respect to Mr. Franklin's background has been set forth in the PSR. Additionally, the following information regarding Mr. Franklin may be relevant to the Court's decision.

Sammy Franklin is a lifelong resident of East Tennessee. He was born on August 30, 1962 to Eddie and JoAnne Franklin. Sammy was the second of four children. His older brother Bill lives in LaFollette, Tennessee; Tonya Hamilton lives in Simpson, South Carolina; and his youngest brother Benny currently lives in LaFollette. Growing up in East Tennessee, Sammy's father supported his family by years of service working in

2

various coal mines. Over the past fifteen years, Mr. Franklin gave up the mining hat to be employed as a LaFollette dispatcher and a court bailiff. Sammy's mother, JoAnne, worked for several years as an x-ray technician as St. Mary's Hospital in Campbell County. She just recently retired at age 61.

Sammy graduated from Campbell County High School in 1980 and attended Lincoln Memorial University for one year. In February 1982, Sammy volunteered for the United States Army. During his enlistment, he received orders for Fort Knox, Kentucky, Kitizigen, Germany, and Fort Hood, Texas. Mr. Franklin was honorably discharged in November 1986. However, he continued serving his country in the National Guard for one year. While serving in the Army and National Guard, Sammy received the Army Commendation Medal, Good Conduct Medal, Army Achievement Medal with three oak leaf clusters, Overseas Service Ribbon, and the Primary Leadership Development Award.

In 1981, just months before entering the Army, Mr. Franklin married Sharon Goins. Prior to their divorce in 1985, they had one child, Sammy Franklin. Today, Sammy lives in Campbell County. On March 9, 1997, Mr. Franklin married Sheila Justice. They have three children together, Alisha, age 15; Faith, age 3; and Cassidy, age 2. The couple remains married and Sheila has been supportive of Mr. Franklin's difficult situation ahead of him and has attempted to provide a stable environment for their three children. Mrs. Franklin is struggles to make ends meet while her husband is incarcerated by working forty plus hours a week at the local Big Lots in Campbell County.

During his National Guard service, Mr. Franklin also worked for Russell Security at West Town Mall. In May 1987, Mr. Franklin applied and was accepted into the Campbell County Sheriff's Department. His initial assignment with the Department was

3

as a dispatch jailer. After serving in this capacity for one year, Mr. Franklin became a patrol deputy and graduated from the police academy in May 1989.

Shortly after graduating from the police academy, Mr. Franklin was assigned as the Drug Abuse and Resistance and Education (D.A.R.E.) Instructor for Campbell County. D.A.R.E. is a program designed to educate elementary school children as to the dangers of drugs and drug use. Mr. Franklin was responsible for meeting with, educating, and instructing fifth graders in eleven Campbell County elementary schools. During his many years as the D.A.R.E. instructor, Mr. Franklin educated and mentored hundreds of children. According to Ms. Angel:

> He performed admirably instructing our students how to recognize drugs; providing them with useful techniques to help them resist drugs offered to [them] by [] adults and rewarding them for their efforts. . . . The students came to know him as a trusted friend, the teachers as a valuable resource and a reliable colleague.

(Collective Exhibit 1, Angel.) Sammy understood the immense responsibility of conducting a successful D.A.R.E. program. Because of his devotion to his community, his job and the Campbell County children, Sammy went above and beyond the call of duty in helping at the schools and beyond:

> He would go to lunch, recess and come to gym class with the students. He did a super job with them. I can still picture the thrill on their faces at Sammy being present. They all loved Sammy and I know he really positively impacted their lives. He was and still is a role model to those students.

(Id., Morton.)

> I first became acquainted with Sammy about 15 years ago when my two elementary-age boys were participating in a local Junior Pro Basketball league. Sammy worked with this league and refereed ball games. He was well respected by both students and parents. He was a good example and always displayed professional behavior. Sammy also served as the D.A.R.E. officer for Campbell County schools. I personally attended

4

some of the D.A.R.E. programs that Sammy presented to the children and was impressed by his dedication and sincerity when working with the school children. I feel confident he was a positive influence in many of their lives, including my boys.

(Id., Broadway.) Sammy Franklin protected the Campbell County youth from drugs and from child predators. Mr. Franklin's primary duties within the Campbell County Sheriff's department were to investigate child abuse cases and help those children subjected to the horror of physical and sexual abuse. Perhaps the most emotionally draining assignment any officer can undertake, Mr. Franklin performed in an extraordinary fashion:

> In my position as a school counselor I have called him numerous times seeking his assistance in cases concerning sexual physical abuse. He was always professional. His assistance and expertise invaluable. His demeanor with the students considerate and compassionate. Mr. Franklin never failed to do follow-ups with my office after each case. Many times following through into the next school year.

(Col. Ex. 1, Angel.) "Guidance counselors [in Campbell County schools] have dealt with Sammy on several occasions through Department of Children's Services referrals. Each counselor has felt that [the] referrals were being handled by a person that truly cared about the student's welfare . . ." Id., Owens. From the moment Sam Franklin donned his uniform until the incident which brings him before the Court, Detective Franklin was indeed a devoted police officer who spent his time on the force protecting those in his community, especially those most in need – the children.

Over Mr. Franklin's lengthy career with the Campbell County Sheriff's Department and various other agencies, Mr. Franklin consistently performed with the utmost devotion. A review of his police file shows numerous awards, commendations

5

and perhaps most importantly, letters written directly from those who witnessed his good deeds. See Collective Exhibit 2.

## IV.    DEFENDANT'S VERSION OF FACTS CONCERNING THE OFFENSE

During the morning hours of July 8, 2004, Detective David Weber asked for Mr. Franklin's assistance in arresting Eugene Siler. According to Detective Weber, Siler had a lengthy history of drug use and drug sales in and around his home, and adjacent to White Oak Elementary School. According to Weber, Siler was in violation of his probation, and he had attempted to flee several times in the past. Mr. Franklin, although not assigned to narcotics, agreed to assist in the arrest after he finished meeting with the Department of Children's Services regarding the Spicer child abuse case. Mr. Franklin arrived at the Campbell County Sheriff's office around 12:50 pm.

Upon arrival at the office, Mr. Franklin learned that Josh Monday and Shayne Green were also assisting in the apprehension and arrest. As they made their way out of the office, Will Carroll offered his assistance as well. Weber and Mr. Franklin drove together and the remaining three took a separate official vehicle.

As the officers approached Siler's residence, Mr. Franklin and Weber drove up the driveway while the other three parked at White Oak Elementary School. Mr. Franklin and Weber walked to the front of the trailer and knocked on the door. No one answered. They got back in the car and drove to the school to meet the other three officers. The decision was made for both cars to drive into Siler's driveway and approach the trailer together: two in front; three around back.

As Mr. Franklin approached the front door, he heard Green say, "he's running." With Carroll as his backup, Mr. Franklin proceeded to knock on the front door.

Case 3:05-cr-00013-TAV-HBG    Document 14    Filed 07/01/05    Page 6 of 20    PageID #: 6

Eventually Jenny Siler, Eugene Siler's wife, answered the door and asked why the deputies were there. Mr. Franklin informed Mrs. Siler that the Campbell County Criminal Court had issued an arrest warrant for her husband, and they were there to take him into custody. At this point in time, Mr. Franklin believed Mrs. Siler was stalling in order to give her husband adequate time to flee. Mr. Franklin and Carroll then entered Siler's trailer and looked out the back door.

When Mr. Franklin opened the back door he witnessed Monday and Green attempting to apprehend and arrest Eugene Siler who had fled out the back. Eventually, the officers secured Siler using handcuffs and brought him inside the trailer. When Siler was seated in the trailer, Mr. Franklin pulled Mrs. Siler aside and informed her that their young son should not have to witness his dad being arrested and recommended that she take her son elsewhere. Prior to Mrs. Siler leaving the trailer, Mr. Franklin searched her purse to ensure she was not removing drugs or the like from the trailer.

When Mrs. Siler and her son left the trailer, other officers began demanding that Siler sign a consent to search form. Shortly after being lifted into the trailer, Siler began complaining that the handcuffs were too tight and hurting his wrists. Upon noticing the awkward positioning of the handcuffs, Mr. Franklin temporarily removed them. Mr. Franklin then properly handcuffed Siler with his hands in front. During the next thirty-five minutes, Mr. Franklin witnessed the other officers hit, kick, slap, threaten with a gun and pull Siler's hair, among other acts. Mr. Franklin never took an active part in the actual physical abuse; however, he did threaten Siler with the use of a slapjack, but at no time did Mr. Franklin ever produce the slapjack. Although Mr. Franklin did in fact intervene when certain threats were made to Siler, he failed to intervene completely and

7

ensure Siler's safety. At no time prior to or during the above events had Mr. Franklin ever discussed or agreed upon the acts which took place.

The ordeal which gives rise to the instant offense lasted approximately two hours. However, Mr. Franklin was only present in the trailer for approximately forty minutes. He left the trailer to speak with Mrs. Siler and request her to sign the consent form. Ultimately she declined, and she and her son were allowed back inside the trailer. At that point in time, the actions giving rise to the instant offense ceased, and Mr. Siler was transported to the Campbell County jail. Shortly after this incident, several state and federal agencies investigated the events and allegations taking place at the Siler residence. Mr. Franklin was terminated from the Sheriff's Department and subsequently indicted in state court. On February 23, 2005, Mr. Franklin pled guilty to an Information filed in this Court.

## V.    DEFENDANT'S VERSION OF COOPERATION

Mr. Franklin has cooperated with the Government, and specifically AUSAs Charles Atchley and Allison Jernow and FBI Agents David Whitlow and Joshua McKinney. Specifically, Mr. Franklin assisted the above-named individuals by agreeing to and giving a full debrief on January 26, 2005.    Mr. Franklin not only implicated himself in the conspiracy to which he has pled guilty, but also informed the Government, during his debriefs, of other individuals involved and the extent of their involvement.

In addition to this and other debriefing sessions, Mr. Frankin agreed, without promises of leniency, to testify against those involved. The substantial information gained through Mr. Franklin greatly assisted the government in procuring plea agreements with several of the other officers. Since the initial debrief, Mr. Franklin has

spoken with the Government on at least one other occasion in an effort to assist in other matters. The Defendant believes the Government should make a 5K1.1 downward departure motion given that the cooperation provided by Mr. Franklin has been both substantial and truthful as it relates to this and other ongoing investigations.

## VI.    SENTENCING CONSIDERATIONS

### A.    The Effect of Unites States v. Booker/Fanfan:

The Supreme Court, in United States v. Booker/Fanfan, recently held that the federal sentencing guidelines are no longer mandatory but are subject to the jury trial requirements of the Sixth Amendment of the U.S. Constitution. United States v. Booker/Fanfan, – U.S. –, 125 S. Ct. 738 (2005). Justice Scalia cited four previous decisions that were consistent with the Court's findings in Booker/Fanfan. In Jones v. United States, 526 U.S. 227, 251 n.11 (1999), the Court held a rule was necessary "'requiring jury determination of facts that raise a sentencing ceiling' in state and federal sentencing guidelines systems." Booker, 125 S. Ct. 748. This decision was confirmed and expanded in Apprendi v. New Jersey, 530 U.S. 466 (2000). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In Ring v. Arizona, 536 U.S. 584 (2002), the Supreme Court held "a trial judge, sitting alone" was not permitted to determine the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty. Id. at 588-89. The Court further stated, "if a state makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact – no matter how the State labels it – must be found by a jury beyond a reasonable doubt." Id. at 602.

9

The final decision by the Supreme Court in this series of cases held the Washington State sentencing guidelines were unconstitutional where they mandated a sentence imposed on facts other than those admitted by the Defendant or reflected in the jury verdict. Blakely v. Washington, 542 U.S. – , 124 S. Ct. 2531, 2537 (2004).

Following this series of cases, the Booker Court found "no distinction of constitutional significance" between the Federal Sentencing Guidelines and the Washington procedures at issue in Blakely. Booker, 125 S. Ct. at 756-57. The effect of this ruling was to remove the mandatory aspect of the federal sentencing guidelines and to provide an appellate review standard of "reasonableness" in sentencing. Id.

**B.      Eastern District of Tennessee Opinions:**

Judges Greer and Collier of the Eastern District of Tennessee at Greenville and Chattanooga, respectively, have authored opinions post-Booker, regarding their views of new federal sentencing.  In United States v. Musick, Case No. 2:03-cr-62 (E.D. Tenn. Jan. 21, 2005) (attached hereto as Ex. 3), Judge Greer correctly concluded that Federal Sentencing Guidelines are "effectively advisory." Id. at 2.  However, the perplexing question left unanswered by the Supreme Court is this: "How much weight should be given by a sentencing judge to the guidelines in determining what sentence to impose in any particular case?" Id. at 3.  As in all such matters, there are extremes at each end and a middle ground that stretches the vast distance between those extremes.

One extreme, according to Judge Greer, would be to return to an indeterminate system.  The Supreme Court itself noted that no violation of Apprendi would occur should the law give a district court the ability to depart from the guidelines at one's

individualized discretion; however, the <u>Booker</u> Court also indicated that it had no intention of returning to the indeterminate sentencing system of the past:

> So modified, the Federal Sentencing Act . . . makes the Guidelines effectively advisory. It requires a sentencing court to consider the Guidelines ranges . . . but it permits the court to tailor the sentence in light of other statutory concerns as well. . .
>
> The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.

<u>Booker</u>, 125 S. Ct. at 756-57, 767. The other extreme would be to hold the sentencing guidelines as creating a presumptive sentence that must be overcome by some substantial or compelling reason before a judge could deviate from the guidelines. <u>Musick</u>, 2:03-cr-62, 3-4. As Judge Greer correctly states:

> Such an approach would completely frustrate the majority holding that the federal sentencing guidelines are subject to the jury requirements of the Sixth Amendment and would in reality constitute a return to the previous system. Such a result would render <u>Booker</u> truly much 'ado about nothing.'

<u>Id.</u> at 6. Judge Greer then concludes that the answer must then lie in the middle between the outer extremes.

Judge Collier, in <u>United States v. Phelps</u>, 366 F. Supp.2d 580 (E.D. Tenn. 2005), sets out the methodology used during sentencing. According to <u>Phelps</u>, courts should first determine the appropriate guidelines range "applicable to each case that comes before it. . . . in most cases . . . the court [will] proceed just as it always has, ruling on objections to the PSR and resolving any factual disputes to the extent they would affect . . . the range." <u>Id.</u> at 584-85. The second step under <u>Phelps</u> is to "determine whether any departures from the advisory Guidelines range are appropriate." <u>Id.</u> at 585. The third and final step is for the court to consider the directives of 18 U.S.C. § 3553.

In Phelps, the court undertook the task of determining the weight to be given to the guidelines range as opposed to other § 3553 factors. The court indicates, "contrary to the sense conveyed by the [other] district courts . . ., the Court does not believe the advisory Guidelines range should be treated as a starting point or necessarily understood as representing a presumptively reasonable sentence in a given case." Id. at 587. The court continued by stating the guidelines are merely one of a "universe of factors pertinent to the Court's sentencing decisions . . ." Id. Collier concluded his analysis by stating:

> All of these considerations persuade the Court the advisory Guidelines should be treated as a major and persuasive factor among the universe of considerations contemplated by § 3553(a). This is not to say the advisory Guidelines range is *per se* reasonable or that sentences should fall within that range absent some exceptional or extraordinary circumstance. . . .
>
> Generally speaking, the Court will impose a non-Guideline sentence where it finds such a sentence is sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate specific and general deterrence, and provide the defendant with needed training, care, or treatment in the most effective manner.

Id. at 589-90.

### C.    U.S. Code and Post-Booker Analysis:

18 U.S.C. § 3553 (2005) provides in pertinent part:

> § 3553. Imposition of a sentence
>     (a)    Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --
>         (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>         (2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established

. . .

(5) any pertinent policy statement;

. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

§ 3553(a) 2005. The U.S. Code is quite explicit regarding the role of 18 U.S.C. § 3553(a) in sentencing determinations. 18 U.S.C. § 3582(a) (2005) specifically states:

The Court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Further, 18 U.S.C. § 3661 (2005) provides:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

With the excision of § 3553(b), the remaining provisions of § 3553(a) and those statutes enumerated above have full effect. That is, they are no longer subordinated to

13

the previous § 3553(b) requirement that a court must follow the federal sentencing guidelines over other factors.

Since the guidelines are advisory and 18 U.S.C. § 3582(a) specifically requires that courts, in determining a sentence, "shall consider" all 18 U.S.C. § 3553(a) factors, any federal sentencing guidelines that contradict the other § 3553(a) factors can be of no effect. For example, 18 U.S.C § 3553(a) requires a court to consider, among other things, the nature and circumstances of the offense and history and characteristics of the defendant. However, under the federal sentencing guidelines, the history and characteristics of the defendant are generally prohibited by §5H1.1 et seq. Since §5H1 now stands in direct contradiction to 18 U.S.C. §§ 3553(a)(1), 3582(a) and 3661, and since the guidelines are advisory in nature per Booker, then no other interpretation can be maintained except that the provisions of U.S.S.G. §5H1 and any other contradictory provisions of the guidelines are void by law. Therefore, the only conclusion is that the federal sentencing guidelines are legally and factually subordinate to the statutory provisions of the U.S. Code with respect to sentencing determinations.

## VII.    SENTENCING APPLICATION TO SAMMY FRANKLIN

As an initial matter, the sentencing range for the crime in which Mr. Franklin has pled is zero to ten years with a maximum fine of Two Hundred Fifty Thousand Dollars ($250,000.00). Further, any term of supervised release cannot exceed three years.

### A.    § 3553(a)(1): Nature & Circumstances of the Offense and History & Characteristics of the Defendant

Based on the nature and circumstances of the offense and the history and characteristics of the defendant, Mr. Franklin deserves a sentence at or near the bottom of the applicable statutory range. With regards to the nature and circumstances of the

14

offense, Mr. Franklin relies on the information contained in Section IV, <u>supra</u>. As this Court is aware, Mr. Franklin is criminally responsible for his actions on July 8, 2004. However, this alone does not end the inquiry as to his involvement in the instant offense.

Although not entirely passive in nature, Mr. Franklin's involvement in the incident on July 8, 2004 is best described as one of failing to act. Mr. Franklin was the senior officer on site, and he readily admits that he failed to intervene when the physical abuse began. Therefore, Mr. Franklin asks this Court to weigh Mr. Franklin's actual role in the offense. Mr. Franklin also requests this Court to take into account the sworn statement of Mr. Siler. In his statement to the Tennessee Bureau of Investigation, Mr. Siler states that he remembers being hit and/or slapped by three distinct officers; however, based on his descriptions, Mr. Franklin was not one of the perpetrators.

Based on Mr. Franklin's background and personal characteristics, this Court should impose a lenient sentence. Mr. Franklin relies in part on his background information contained in Section III, <u>supra</u>. Further, Mr. Franklin submits One Hundred Fifty-Four character letters written by family members, friends, teachers, colleagues, moms, dads, and children – people who know him and speak as to his integrity, character, and the effect he has had on their lives. <u>See</u> Collective Exhibit 1. Upon reading these letters, this Court will come to know Sammy Franklin and question how this man of moral integrity, a family man, a husband and father, could have possibly been involved in the incident on July 8, 2004. This Court will come to understand through the individual voices of his community that Sammy Franklin deserves leniency – leniency only this Court can give. A lifetime spent serving others should not easily be forgotten.

**B.     § 3553(a)(2): Need for the Sentence Imposed**

Because of his involvement and conviction in the present offense, Mr. Franklin will never again work in law enforcement. He will no longer supervise the D.A.R.E. program and meet with Campbell County school children. Mr. Franklin will never again investigate child abuse and neglect cases and protect those who need it most. With all he has lost and will continue to lose, he accepts responsibility.

This Court is directed to provide just punishment for the offense. As such, Mr. Franklin respectfully requests this Court to look past the criminal conspiracy and focus on Mr. Franklin's individual actions. He has no history of violence, not even a single complaint in his personnel file. As such, the public is safe and deterrence is a foregone conclusion for those in uniform.

**C.     § 3553(a)(3): Kinds of Sentences Available**

Mr. Franklin reiterates that the offense statute authorizes a sentencing range between zero time served and ten years, including a fine and supervised release. Therefore, the Court in its wisdom should only impose such a penalty, not necessarily jail time, which is "sufficient, but not greater than necessary, to comply with" the code. 18 U.S.C. § 3553(a). As there exist a host of potential supervised probation criteria, jail time, other than time served, may not be appropriate for this defendant.

**D.     § 3553(a)(4): Kinds of Sentence and Sentencing Range**

For purposes of establishing the proper guidelines range, Mr. Franklin herein makes the following argument.

As an initial matter, Mr. Franklin incorporates the Notice of Objection filed with this Court as if fully set forth herein. Further, with regards to the enhancement for

16

obstruction of justice, Mr. Franklin submits that the Government must prove by a "preponderance of the evidence" that (1) Mr. Franklin committed perjury; and (2) the alleged perjury actually had an obstructive effect on the instant offense, as per United States v. Roberts, 243 F.3d 235, 240 (6th Cir. 2001) (citing United States v. Perez, 50 F.3d 396 (7th Cir. 1995)). United States v. Phelps, 366 F. Supp.2d at 585 (stating, "the Court will continue to apply the preponderance of the evidence standard . . .").

Further, Mr. Franklin requests that this Court find that he is entitled to a mitigating role adjustment under §3B1.2(b) – minor participant in the offense. This provision applies to those defendants who play a lesser role than those others involved in the criminal conspiracy. As the facts of the July 8, 2004 incident establish, Mr. Franklin was only in the house for less than half of the total time of the offense. Further, while in the Siler trailer, Mr. Franklin never physically harmed Mr. Siler. As Booker advances the legal theory that sentencing should be based on individual factors for individual defendants, sentences should fit the defendant's individual culpability – not just the charged offense, but the defendant's role in that offense. As Mr. Franklin's participation in the crime is far less than his co-defendants, a mitigating adjustment of two levels is appropriate.

### E.    § 3553(a)(5): Pertinent Policy Statement

Mr. Franklin's sentence should be considerably lower than that of his co-defendants'. Although the guidelines are only advisory, the policy statements contained within the guidelines are indeed illuminating on this point: "Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity." USSG ch. 1, pt. A, intro. comment.

Case 3:05-cr-00013-TAV-HBG    Document 14    Filed 07/01/05    Page 17 of 20
PageID #: 17

3. This policy statement speaks not only to sentencing of defendants of wholly different crimes, but also to individualized conduct within the same criminal conspiracy.

### F.     § 3553(a)(6): Need to Avoid Unwarranted Sentence Disparities

First and foremost, Mr. Franklin respectfully brings to this Court's attention the key term in the above heading: "unwarranted." Mr. Franklin submits that he should in fact receive a lesser sentence than his co-defendants for the numerous reasons herein stated. As such, any disparity between his sentence and those of his co-defendants can best be described as "warranted" due to the individualistic nature of Mr. Franklin's minor involvement.

Further, this Court should also look at cases similar to that of these current defendants. Section 3553 seeks to avoid unwarranted sentence disparities between co-defendants, but perhaps most importantly, defendants generally convicted of the same crime. In that regard, Mr. Franklin respectfully brings to this Court's attention the Supreme Court case of Koon v. United States, 518 U.S. 81 (1996), and specifically, the similarities between the lead officer and Mr. Franklin. Officer Koon was the senior officer present when Mr. Rodney King, after being lawfully detained, was beaten by several law enforcement officers. Id. 85-88.

Similar to the facts of this case, Officer Koon's criminal conduct can best be described as failing to act or intervene. However, quite contrary to Mr. Franklin's case, the victim in Koon was in fact severely injured, including a broken leg and ribs, facial fractures, and a host of other injuries. Id. The district court in Koon departed from the guidelines' range on specific grounds – which are present in this matter: loss of employment and being subject to victimization in prison, among others. Id. at 89-92.

Ultimately, Officer Koon received a sentence substantially less than the current PSR indicates for Mr. Franklin.

### G. § 3553(a)(7): Provide Restitution

Mr. Franklin has provided the Government with all pertinent information regarding any items he believed were taken into evidence. Mr. Franklin is willing to pay restitution within his means to the victim. As this Court is most likely aware, Mr. Siler has filed suit against the officers involved and the Campbell County Sheriff's Department seeking substantial monetary damages.

## VIII. CONCLUSION

The decision in <u>Booker</u> instructs sentencing courts to look to the various sentencing statutes with equal weight and authority. Since the sentencing guidelines are incorporated into the sentencing decision-making process by virtue of the provisions of 18 U.S.C. §§ 3553(a) and 3582(a), the guidelines are subordinate to the provisions therein as well as the provisions of other statutes such as 18 U.S.C. § 3661. The Supreme Court emphasized the most basic principle regarding sentencing: "The court shall impose sentence sufficient, but not greater than necessary." § 3553(a).

Lastly, although Mr. Franklin was on officer of the law, he must still be sentenced under the framework provided by <u>Booker</u> and its resulting progeny. The very fact that Mr., Franklin was an officer is the reason he is criminally accountable under § 241. Congress spoke to the seriousness of the crime when it authorized this Court to impose a sentence between zero and ten years. After taking into account all of the other factors mentioned herein, this Court should place Mr. Franklin on supervised probation or impose a sentence at least less than that of his co-defendants.

Case 3:05-cr-00013-TAV-HBG    Document 14    Filed 07/01/05    Page 19 of 20
PageID #: 19

Respectfully submitted on July 1, 2005.

McKELLAR ROSKIND, LLP

By: _____
Andrew S. Roskind, BPR # 022263
Attorneys to Samuel Franklin

Franklin Square
9724 Kingston Pike, Suite 208
Knoxville, Tennessee 37922
(865) 566-0125

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the forgoing document has been served on all counsel of record through the Electronic Case Filing System or by placing same in United States Mail, postage pre-paid to:

AUSA Charles E. Atchley, Jr.
800 Market Street, Suite 211
Knoxville, Tennessee 37902

Ms. Myra Melton
United States Probation Office
800 Market Street, Rm 311
Knoxville, Tennessee 37902

Served on July 1, 2005.

By: _____
Andrew S. Roskind

20