# Tennessee Bureau of Investigation
# Investigative Report

**Case #:** KX-82A-000029
**I.R. #:** 7
**Description:** Interview - Sworn Statement - Samuel Reed Franklin - 07/19/04
**Office of Origin:** Knoxville
**Case Agent:** Morrell, Rick L
**SAC/ASAC:** Denney, Robert

## Narrative

(V) Lester Eugene Siler (W/M - ▓▓▓)
(V) Jenny Lynn Siler (W/F - ▓▓▓)
(S) Gerald David Webber, Jr. (W/M - ▓▓▓)
(S) Joshua James Monday (W/M - ▓▓▓)
(S) Samuel Reed Franklin (W/M - ▓▓▓)
(S) Shane Christopher Green (W/M - ▓▓▓)
(S) William Paul Carroll (W/M - ▓▓▓)

My name is Samuel R. Franklin and I live at ▓▓▓ in Jacksboro, Tennessee. I am a Detective with the Campbell County Sheriff's Department. I have been employed with the Sheriff's Department for seventeen years. I had never met or had dealing with Lester Eugene Siler until July 8, 2004. On July 8, 2004 I was asked by Detective David Webber to assist in the arrest of Eugene Siler. Det. Webber had a warrant for Siler for violating his probation. Myself and David Webber rode to ▓▓▓ together. ▓▓▓ is the residence of Eugene Siler. Josh Monday, Will Carroll, and Shane Green drove my county issued Blazer to White Oak. I was in Webber's car. On arriving at Siler's residence Josh drove to the wrong residence. I went to the front door and knocked. Webber held back in order to watch in case anyone ran. We expected Siler to run from us. I heard movement on the inside of the trailer. David told me he thought Siler had already run. I could hear voices behind the trailer. It was Josh & Shane. David and I got in Webber's vehicle and drove to where Josh and Shane were. We returned to Siler's residence. Shane Green and I approached the front door. Before I could knock we heard the back door open. Shane ran around the trailer and I continued to knock on the front door. Finally a female voice asked "who is it?" I advised her "Sheriff's Department." Mrs. Siler opened the door. I asked if Eugene was there and she told me "no." I could see the back door was open. I told her she had lied and we were there to serve a warrant. I then entered the trailer. I walked to the back door and could see Eugene resisting arrest. Josh and Shane were trying to handcuff him. Webber was standing nearby. I asked Mrs. Siler why she lied and she replied "I didn't know what was going on." At this time the officer out back assisted Siler into the back door. The back door was six feet off the ground. Mrs. Siler was asked to leave while we talked to Eugene to see if he would give consent to search. The little boy was upset and we wanted the little boy out. She agreed to leave saying she would go to the 3-point Market. Eugene was crying. He had scratches on his shoulders and on his forehead and arms from the briars behind the house. We asked for consent. He never said no, but he wouldn't sign it. I moved his handcuffs to the front of his body and gave him a cigarette. He said he didn't understand the consent form. I read it, in its entirety, twice. We (me and Will Carroll) went to get Mrs.

Siler to see if she would give consent to search. We found her at the end of the residence's driveway. She was requested to consent to a search. She refused. She said she wanted to talk to Eugene. We let her do that. I talked to her some more about signing the consent form. I told her she would probably be arrested for interfearing. We let the little boy go in to see his father. He came back out and told his mother that Eugene looked fine and that he was not beaten up. We made arraigments for Siler's son to be picked up. We called for a car to transport Siler and his wife to jail. After we arrived at the jail, Billy Marlow told me that Siler was accusing the arresting officer of beating him and hooking jump cables to him. To the best of my knowledge no one beat, mistreated, threatened, pressured, or hooked Mr. Siler to any type of jumper cables. If Mr. Siler was injured in any way it occurred when the officers were trying to arrest him. As far as I know the officers used only the force nessecary to make the arrest. We did not search the residence. After being made aware of the allegations, I took 5 or six polaroid photos of Siler. The Sheriff and Chief Deputy were already aware of the allegations. The photos are of good quailty and show only minor scratches and abrasions. For the time we arrived until we left, we were there 1 1/2 to two hours. My only physical contact with Siler was when I handcuffed and unhandcuffed Siler. Three bottles of pills were found behind the residence when Siler was arrested. I did not physically assault Siler in any way.

x Samuel R. Franklin
7-19-2004

Descriptive Data:

Samuel Reed Franklin
W/M

Jacksboro, TN 37757

SV:knh

Attachment: Sworn Statement-Samuel Franklin

This confidential document is the property of TBI.
Its contents are not to be distributed outside of your agency.

APPROVED: _____
DATE: _____

# TENNESSEE BUREAU OF INVESTIGATION
## Nashville, Tennessee

## SWORN STATEMENT

Do you, **Samuel Reed Franklin**, solemnly swear that the statement you are about to give is the truth, the whole truth, and nothing but the truth, so help you God?

ANSWER: **I DO**     SIGNATURE: x **Samuel R Franklin**

This is a sworn statement of (NAME) **Samuel Reed Franklin**,

(SEX) **M**, (RACE) **W**, (AGE) **41**, (DOB) ███████,

(ADDRESS) ███████ **Jacksboro Tn 37757** ███

as given to Special Agent **Steve Vinsant**

of the Tennessee Bureau of Investigation (TBI) on **July 19, 2004**,

at **1:50** AM/**PM** at the location of **Drug Task Force off Jacksboro Tn. 37757**.

This sworn statement and oath taken under the authority of Tennessee Code Annotated 38-6-102.

**Steve Vinsant**
Signature of Special Agent

**R. Morrell ASAC/TBI**
WITNESS

_____
WITNESS

To be accompanied by Affidavit     Page # **1** of **6** Pages

File: _____     Serial: _____

BI-0059 (Rev. 12-89)

CASE # **Kx-82A-000029**

RI #5 (JK#1)

DRN

My name is Samuel R. Franklin and I live at ▇▇▇▇▇▇ in Jacksboro, Tennessee. I am a Detective with the Campbell County Sheriff's Department. I have been employed with the Sheriff's Department for seventeen years. I had never met or had dealings with Lester Eugene Siler until July 8, 2004. On July 8, 2004 I was asked by Detective David Webber to assist in the arrest of Eugene Siler. Det. Webber had a warrant for Siler for violating his probation. Myself and Davis Webber rode to ▇▇▇▇▇▇ together. ▇▇▇▇▇▇ is the residence of Eugene Siler. Josh Monday, Will Carroll and Shane Green drove my County issued Blazer to White Oak. I was in Webber's car. On arriving at Siler's residence Josh drove to the wrong residence. I went to the front door and knocked. Webber held back in order to watch in case anyone ran. We expected Siler to run from us. I heard movement on the inside of the trailer. Davis told me he thought Siler had already run. I could hear voices behind the trailer. It was Josh & Shane. David and I sat in Webber's vehicle and drove to where Josh and Shane were. We returned to Siler's residence. Shane Green and I approached the front door. Before I could knock we heard the back door open. Shane ran around the

SR#

trailer and I continued to knock on the front door. Finally a female voice asked "who is it?" I advised her "Sheriff's ~~Dept~~ Department." Mrs. Siler opened the door. I asked if Eugene was there and she told me "no." I could see the back door was open. I told her she had lied and we were there to serve a warrant. I then entered the trailer. I walked to the back door and could see Eugene resisting arrest. Josh and Shane were trying to handcuff him. Webber was standing nearby. I asked Mrs. Siler why she lied and she replied "I didn't know what was going on." At this time the officers out back assisted Siler into the back door. The back door was six feet off the ground. Mrs. Siler was asked to leave while we talked to Eugene to see if he would give consent to search. The little boy was upset and we wanted the little boy out. She agreed to leave. Saying she would go to the 3-point Market. Eugene was crying. He had scratches on his shoulders and on his forehead and arms from the briars behind the house. We asked for consent. He ~~to sign~~ never said no, but he wouldn't sign it. I moved his handcuffs to the front of his body and gave him a cigarette. He said he didn't understand the consent form. I read it, in its entirety, twice. We (me and Will Carroll) went to get Mrs. Siler

to see if she would give consent to search. We found her at the end of the residence's Driveway. She was requested to consent to a search. She refused. She said she wanted to talk to Eugene. We let her do that. I talked to her some more about signing the consent form. I told her she would probably be arrested for interfering. We let the little boy go in to see his father. He came back out and told his mother that Eugene looked fine and that he was not beaten up. We made arraignments for Siler's son to be picked up. We called for a car to transport Siler and his wife to jail. After we arrived at the jail, Billy Marlow told me that Siler was accusing the arresting officer of beating him and hooking jump cables to him. To the best of my knowledge no one beat, mistreated, threatened, or pressured, or hooked Mr. Siler to any type of jumper cables. If Mr. Siler was injured in any way it occurred when the officers were trying to arrest him. As far as I know the officers used only the force necessary to make the arrest. We did not search the residence. After being made aware of the allegations. I took 5 or six polaroid photos of Siler. The Sheriff and Chief Deputy were already aware of the allegations. The photos are of good quality and show only minor scratches and abrasions.

SRJ From the time we arrived until we left, we were there 1½ to two hours. My only physical contact with Siler was when I handcuffed and unhandcuffed Siler. Three bottles of pills were found behind the recliner when Siler was arrested. I did not physically assault Siler in any way SRJ

Samuel R Junk
7-19-2004

# AFFIDAVIT

I, _Samuel Reed Franklin_, have read, or have had read to me, this sworn statement which begins on Page one (1) and ends on Page **6**. I fully understand the contents of the entire statement made by me. The statement is true. I have initialed all corrections and have initialed the bottom of each page containing the statement.

I have made this statement freely without hope of benefit or reward, without threat of punishment, and without coercion, unlawful influence, or unlawful inducement.

At the time of the making of this statement, I am not under the influence of alcohol, drugs, or any other type of intoxicant which would render me incapable of understanding the statement made by me.

SIGNATURE: _Samuel R Franklin_

This statement sworn and subscribed before me this the **19th** day of **July**, **2004**

_Steve Vinson_
Special Agent
TBI

Statement ending: DATE: __7-19-04__
TIME- __2:47__ ☐ AM ☑ PM

WITNESS: __R. Morrell ASAC/TBI__

WITNESS: _____

Attach to back of sworn statement          Page # **6** of **6** page